FILED

DEC 10 2019

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No. 19-368 |
| v. ) | |
| JUSTIN ASH ) | (18 U.S.C. § 371) |

# INFORMATION

The United States Attorney charges:

## COUNT ONE

At all times material to this Information:

### Introduction

1. The United States Food and Drug Administration ("FDA") was an agency of the United States government entrusted with protecting the health and safety of the public by enforcing the provisions of the Federal Food, Drug, and Cosmectic Act, Title 21, United States Code, Section 301 et seg. ("the Act"). The Act was also implemented and defined by various provisions of the Code of Federal Regulations ("C.F.R."). The FDA's responsibilities under the Act included regulating the manufacture, labeling, and distribution of all drugs and drug components shipped or received in interstate commerce.

2. The Act defined "drugs" to include articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans; articles other than food intended to affect the structure or any function of the body of humans; and articles intended for use as a component of such articles. 21 U.S.C. § 321(g)(1).

3. The introduction or delivery for introduction into interstate commerce of any misbranded drug was prohibited. 21 U.S.C. § 331(a). "Misbranding" encompassed dispensing

without a valid prescription a drug intended for use by man, which, because of its toxicity or potential for harmful effect, was not safe for use except under supervision of a licensed practitioner or where its FDA-approved application limited it to prescription use.  21 U.S.C. § 353(b)(1).  A drug was also misbranded where its labeling was false or misleading in any particular, 21 U.S.C. § 352(a); where its labeling did not bear adequate directions for use, 21 U.S.C. § 352(f)(1); or where the drug was manufactured, prepared, propagated, compounded or processed in an establishment not registered with the Secretary of Health and Human Services, 21 U.S.C. § 352(o).

4. There was an exemption from FDA labeling requirements for so-called "research chemicals," but only if certain conditions were met, one of which was that the drug not be involved in "clinical use."  21 C.F.R. § 201.125.  Consumption of a drug to achieve a particular effect on the body, like inducing sleep or relieving anxiety, demonstrated intended clinical use as a drug rather than as a research chemical, and thus the exemption from adequate directions for use applicable to research chemicals would not apply.

### Relevant Substances

5. Benzodiazepines were a class of drugs that produced central nervous system depression.  Physicians could prescribe FDA-approved benzodiazepines to treat insomnia and anxiety, but benzodiazepines also carried risks of dependency, toxicity, and even fatal overdose, particularly when combined with other central nervous system depressants.

6. Clonazolam and diclazepam were benzodiazepines.

7. Flubromazolam was a benzodiazepine derivative that carried increased risk of harm to users due to its ability to produce strong sedation and amnesia at low doses.

8. Etizolam was a drug known as a thienodiazepine, a class of drugs chemically related to benzodiazepines that carried similar health risks.

9. The FDA had not approved any drugs containing clonazolam, diclazepam, flubromazolam, and etizolam in the United States, and as a result, they could not be legally distributed in the United States for use as a drug.

10. Clonazolam, diclazepam, flubromazolam, and etizolam regularly were sold via online marketplaces that distributed so-called "designer drugs"—i.e., drugs that were designed to mimic the pharmacological effects of controlled substances or prescription drugs.

### The Defendant

11. Defendant JUSTIN ASH was a resident of California. Defendant JUSTIN ASH was associated with, and controlled directly and indirectly, an internet-based business entity, known variously as DRC or Domestic RCS (hereinafter "DRC").

12. Defendant JUSTIN ASH, through DRC, operated a website—www.domesticrcs.com—which advertised and sold clonazolam, diclazepam, flubromazolam, and etizolam.

### The Conspiracy and Its Objects

13. From no later than on or about January 1, 2016, and continuing until on or about May 8, 2018, in the Western District of Pennsylvania, and elsewhere, the defendant, JUSTIN ASH, did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree, with persons, both known and unknown to the United States Attorney, to commit offenses against the United States, that is:

    a. With intent to defraud and mislead, to introduce into interstate commerce misbranded drugs, in violation of Title 21, United States Code, Sections 331(a), 333(a)(2), 352(b)(1), 352(f)(1), and 352(o); and

    b. To fraudulently and knowingly import and bring into the United States merchandise contrary to law, in violation of Title 18, United States Code, Section 545, to wit, misbranded drugs in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2).

### Manner and Means of the Conspiracy

14. It was a manner and means of the conspiracy that defendant JUSTIN ASH, through DRC, advertised and sold clonazolam, diclazepam, flubromazolam, and etizolam purportedly for research purposes only, when in reality, as defendant JUSTIN ASH well knew and intended, the vast majority of his customers purchased these designer drugs from DRC for individual consumption, and not for research purposes.

15. It was a further manner and means of the conspiracy that defendant JUSTIN ASH operated multiple email accounts in connection with DRC, and he or others acting at his direction communicated directly with individual customers about, among other things, the effects of the drugs when used for personal consumption.

16. It was a further manner and means of the conspiracy that defendant JUSTIN ASH obtained bulk supplies of clonazolam, diclazepam, flubromazolam, and etizolam from overseas sources, including from suppliers in China, for the purpose of further distribution to DRC customers in the United States.

17. It was a further manner and means of the conspiracy that, in an effort to evade detection by United States federal authorities, including the FDA, United States Postal Inspection

Service, and United States Customs and Border Protection, defendant JUSTIN ASH caused his overseas suppliers to ship drugs to multiple addresses controlled by defendant JUSTIN ASH and in smaller quantities that would draw less government scrutiny.

18. It was a further manner and means of the conspiracy that, after defendant JUSTIN ASH received shipments of clonazolam, diclazepam, flubromazolam, and etizolam, he caused his employees to press the substances into pills, package the pills, and ship the packages to customers throughout the United States, including customers in the Western District of Pennsylvania.

19. It was a further manner and means of the conspiracy that, in connection with shipments of clonazolam, diclazepam, flubromazolam, and etizolam on behalf of DRC, defendant JUSTIN ASH caused packaging to include disclaimers stating that the substances were for research purposes only, in part to evade detection by regulatory authorities, including the FDA.

**Overt Acts**

20. In furtherance of the conspiracy, and to accomplish its objects, defendant JUSTIN ASH caused the following shipments of misbranded drugs to be sent via the United States Postal Service to an address in the Western District of Pennsylvania:

| Approximate Date | Shipment Contents |
| --- | --- |
| October 4, 2017 | One packet labeled "25xcstar," containing 25 pink round pills of clonazolam |
| October 4, 2017 | One packet labeled "25xstartiz," containing 25 white round pills of etizolam |
| October 20, 2017 | One packet labeled "50xstartiz," containing 50 white round pills of etizolam |
| October 20, 2017 | One packet labeled "25xDstar," containing 25 blue round pills of diclazepam |

All in violation of Title 18, United States Code, Section 371.

# **FORFEITURE ALLEGATION**

1.    The United States hereby gives notice to the defendant, JUSTIN ASH, that, upon his conviction of Count One of this Information, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, including, but not limited to, the following:

    a.    U.S. currency totaling $43,756 seized from 42646 Meadowlark Ridge, Murrieta, California, 92562; and

    b.    U.S. currency totaling $186,998.91 seized from Wells Fargo account XXXXXX9330.

    c.    A sum of money equal to $550,000 in United States currency.

2.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendant up to the value of the forfeitable property described in this forfeiture allegation.

*[signature]*
SCOTT W. BRADY
United States Attorney
PA ID No. 88352