**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | > | |
| | > | **DOCKET NUMBER** |
| **VS.** | > | **0315 2:19CR00368-001** |
| | > | |
| **JUSTIN ASH** | > | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Justin Ash, by and through his attorneys of record, presents the following in response to the Government's Sentencing Memorandum regarding its analysis of § 3553(a) factors.

**1. Nature of the Offense and Characteristics of the Defendant**

The Government "concedes that the defendant's criminal history and personal circumstances, including his documented health issues, militate against a lengthy period of incarceration" (Government's Sentencing Memorandum, page 7). We agree, and strongly urge that 30 months is a greater than necessary sentence.

While the Government emphasizes (on page 4) that the substances were smuggled into the country from overseas, that is the case regarding the raw materials in virtually all similar "research chemical" cases (and almost always from China).

Any emails that put Mr. Ash on notice that his customers were using the chemicals for personal use are similar to those in all cases of this type – the buyers are willing, informed participants, getting what they paid for, and often correspond regarding questions pertinent to their use. The emails from family members suggesting that the customers had other mental health or addiction issues are unfortunate, but virtually all consumers in research chemical cases are abusing the chemicals for one reason or another and can be harmed by the products (more fully discussed, *infra*).

### 2. Need for Promoting Respect for the Law and Deterrence

The Government concedes that there "is little question that the defendant's involvement in this case will ensure that he respects the law going forward and will not become a recidivist. His acceptance of responsibility standing alone reflects a willingness to put his crimes behind him and move on with his life as a productive member of society" (page 7). We agree, and submit that the Government's concern about such an outcome not being a "foregone conclusion" ignores the substantial strides he has made in his flourishing new business endeavors, working with both of his parents, as detailed in our Sentencing Memorandum. Mr. Ash's involvement in this case led to substantial forfeiture obligations totaling approximately $780,000.00, plus legal costs. It is quite clear to him that he didn't make "easy money." We strongly urge that 30 months is a greater than necessary sentence.

### 3. Need to Avoid Unwarranted Sentencing Disparities

The Government suggests that "the agreed-upon, correct [guideline] calculation 'necessarily' takes into account the 'need to avoid unwarranted disparities' under § 3553(a)(6)"

(page 12). However, § 3553(a)(6) provides for a variance from the applicable guideline range, not blind adherence to it. That's exactly what happened in the cases of *U.S. v. Manansingh*, *U.S. v. Marsala and Bumgarner*, and *U.S. v. Smith*, all cited and detailed in the Defendant's Sentencing Memorandum. In all of those cases, the Courts exercised a substantial variance downward from the applicable sentencing guideline. In *U.S. v. Smith*, where the adjusted guideline level was *higher* than for Mr. Ash, the Hon. George J. Hazel noted at sentence:

> Defense, I think very helpfully, lists a number of cases that they say are comparable to this one, none of which involved incarceration. And so I guess my question is would you distinguish those cases? You're obviously free to say that all the judges--none of them were me – well, one of them, I guess, was. But that all of the judges should have done incarceration. That certainly could be the Government's position. But do you distinguish those cases, or is there some other reason why I should incarcerate him when all of these cases did not involve incarceration? (see Sentencing Transcript, at page 11, lines 5 through 15, provided as an exhibit in the Defendant's Sentencing Memorandum)

The Government attempts to minimize the similarity of the list of "research chemical" cases presented to the Court by claiming the substances sold by Mr. Ash are different from the others. In fact, the cases cited by the defense involve a variety of different substances. The point is that they are all being abused by the customers, and all carry significant risks of adverse effects. One of them, 2,4-Dinitropenol (DNP), has been linked to many, many documented deaths (https://www.atsdr.cdc.gov/ToxProfiles/tp64.pdf, at 43-46). Just because cases involve "bodybuilding" drugs doesn't mean they can't be quite harmful. In fact, in the case of *U.S. v. Manansingh*, the government asserted that the "peptide" chemicals presented "a substantial risk of bodily injury or death" and sought a two-level guideline enhancement under § 2N2.1(c)(3)(A). Accordingly, the defense submits that the distinction the Government is claiming is misplaced. Further, even if the substances involved in Mr. Ash's case are more serious than the others, the two-level guideline enhancement sought in Mr. Manansingh's case would be the sentencing

consequence. Such an enhancement was not claimed herein, nor do we see it as applicable, but the point is that even if it were to be applied it should account for a modest increase in sentencing exposure for Mr. Ash over all the other similar case defendants – for example, perhaps a sentence of six months incarceration rather than the home confinement and probation that the other case defendants received.

The Government's arguments distract from what is driving the guideline sentence – a "loss" amount, not an enhancement for nature of the chemicals involved. The consumers of these products, like the consumers in all the comparable cases, got what they bargained for. No two cases are ever "exactly" the same and such a qualifier can't be read literally. The distinctions raised by the Government do not warrant disparate treatment for Mr. Ash.

### 4. Conclusion

For the reasons stated above, it is respectfully submitted that a sentence of probation without custody of any kind would adequately reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence while allowing Mr. Ash to remain a productive member of society.

Respectfully submitted,

<u>/s/ Richard D. Collins</u>
Richard Collins, Esq.
Collins, Gann, McCloskey & Barry, PLLC
138 Mineola Blvd.
Mineola, New York 11501
rcollins@cgmbesq.com
Office (516) 294-0300
*Attorney for Justin Ash*

s/ Charles Porter
Brucker Schneider & Porter
436 Seventh Ave, Suite 300
Pittsburgh, PA 15219
Office (412) 261-0363
*Attorney for Justin Ash*

s/ Donald Casadonte
Collins Gann McCloskey & Barry PLLC
138 Mineola Blvd.
Mineola, New York 11501
Office: (516)294-0300
dcasadonte@cgmbesq.com
*Attorney for Justin Ash*

# CERTIFICATE OF SERVICE

I, Richard Collins, hereby certify that on November 13, 2020, I electronically filed the foregoing Unopposed Motion to File Under Seal with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record by transmission of Notices of Electronic Filing generated by the Court's CM/ECF system, to the following:

Eric Olshan
Assistant U.S. Attorney
Western District of Pennsylvania
700 Grant Street, Suite 4000
Pittsburg, Pennsylvania 15219
412-894-7446
Eric.olshan@usdoj.gov